IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Patricia A. Graham, | ) | Civil Action No. 3:10-01852-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| The Columbia College, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Patricia A. Graham ("Plaintiff") filed this action against The Columbia College ("Defendant"), alleging that she was terminated from her employment because of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. Plaintiff also asserts a state law claim for breach of contract. This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which motion was filed on May 2, 2011. (ECF No. 33.) Also, there is before the court Defendant's motion to consolidate for trial this matter and Norma J. Kirkland v. The Columbia College, Civil Action No. 3:10-01851-MBS (the "Kirkland case"). (ECF No. 31.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett, for pretrial handling. On January 11, 2012, the Magistrate Judge issued a Report and Recommendation (the "Report"), in which report she recommended that Defendant's motion for summary judgment be granted and all other pending motions be terminated as moot. (ECF No. 45.) Plaintiff filed objections to the Report on January 30, 2012, to which Defendant filed a reply on February 16, 2012. (ECF Nos. 46 & 47.) For the reasons set forth below, the court **ACCEPTS** the Report of the Magistrate Judge, **GRANTS** Defendant's motion for summary judgment, and **FINDS AS MOOT** Defendant's motion to

consolidate.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed in the Magistrate Judge's Report. The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate. The court adopts this summary as its own, and will only reference facts pertinent to this analysis of Plaintiff's claims.

Plaintiff is a fifty-four year old female. (See ECF No. 1, ¶ 7.) She was hired by Defendant as a non-tenured instructor of dance in the fall of 1985. (ECF No. 33-2, pp. 7-8.) During her employment, Plaintiff obtained tenure in 1991 and was promoted to full Professor of Dance in 2004. (ECF No. 33-2, pp. 42-44.) In the fall of 2008, Defendant experienced a financial crisis with its endowment losing thirty percent and fundraising decreasing by more than $1,000,000 from the previous year. (ECF No. 33-8, p. 8.) Perceiving a potential budget shortfall of $2,000,000, Caroline Whitson ("Whitson"), Ph.D, Defendant's President, took her concerns to Defendant's Board of Trustees to ensure that the Trustees were full partners in the decision-making process going forward. (ECF No. 33-8, p. 9.)

Based upon recommendations of the committees created as part of Defendant's re-visioning process, twenty-nine faculty and staff positions were eliminated due to changes in the programs and majors being offered by Defendant. (ECF No. 33-4, pp. 10-11.) The savings projected for the first year was $1,300,000 and over time was $1,860,000. (ECF No. 33-8, p. 43.) The Board of Trustees accepted all of Whitson's recommendations. (ECF No. 33-8, pp. 40-41.)

One of Whitson's specific recommendations was the elimination of the Bachelor of Fine Arts in dance. (ECF No. 33-8, pp. 32, 40.) In a related move, Defendant determined that the Bachelor of Arts in dance and dance education would not be eliminated if the dance department could be

2

restructured down to three faculty members. (Id.) At that time, there were four faculty members in the dance department consisting of Martha Brim ("Brim"), Wrenn Cook ("Cook"), Marci Jo Yonkey ("Yonkey"), and Plaintiff. (ECF No. 33-2, pp. 45-46.) In determining which one faculty position in the dance department would be eliminated, Defendant was guided by the goals of keeping the dance education major and directing the dance department's focus toward modern dance. (ECF No. 33-4, p. 14.) Defendant's goals meant either Yonkey or Plaintiff would lose their job because Cook was the only one qualified to teach dance education and Brim's specialty was modern dance. (Id.) As between Yonkey and Plaintiff, Yonkey was significantly younger than Plaintiff, but possessed a Master of Fine Arts in dance and a focus on modern dance. (ECF No. 33-2, pp. 15, 30.) On the other hand, Plaintiff had a Masters in dance, and was tenured as a full-time ballet teacher, who focused almost exclusively on ballet during her employment with Defendant. (ECF No. 33-2, pp. 4-5, 9.) In accordance with the goals of Defendant's re-visioning plan, Plaintiff's position was selected for elimination because her expertise was ballet, not modern dance. (ECF No. 33-4, p. 14.)

As a result of Defendant's restructuring, Plaintiff was one of four persons who were given a terminal contract, i.e., more than a year's notice that their employment would be ending. (ECF No. 33-4, pp. 11-12.) The remaining cuts in faculty were achieved through eliminating positions that were open and by not renewing the contracts of two male faculty members. (ECF No. 33-4, p. 11; ECF No. 33-2, pp. 23-26.) On March 4, 2009, Plaintiff was informed about the elimination of her position.[1] (ECF No. 33-4, pp. 13, 19.) Defendant did offer Plaintiff the opportunity to teach ballet courses as an adjunct in the fall of 2010, but Plaintiff declined the offer. (ECF No. 33-3, pp.

---

[1] The court notes that Defendant has not claimed that Plaintiff was fired as part of a reduction in force.

8-9.)

After losing her job with Defendant, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (See ECF No. 1 ¶ 4.) On May 3, 2010, the EEOC issued Plaintiff a "Notice of Suit Rights" letter. (Id.) Thereafter, on July 16, 2010, Plaintiff timely filed this lawsuit alleging four causes of action. (See ECF No. 1.) Plaintiff specifically alleged in the complaint that Defendant (1) discriminated against her on the basis of her age in violation of the ADEA; (2) deprived her of her rights as a tenured faculty member in violation of the Due Process Clause; (3) terminated her in breach of her employment contract; and (4) failed to follow its policies and procedures, which failure should be enjoined by the court. (Id. at ¶¶ 18-28.) On August 4, 2010, Defendant filed a motion pursuant to Fed. R. Civ. P. Rule 12(b)(6) to dismiss Plaintiff claims for violation of Due Process and injunctive relief and an answer to Plaintiff's complaint denying her allegations. (ECF Nos. 5 & 6.) On September 7, 2010, Plaintiff filed a responsive document entitled "Stipulation of Dismissal with Prejudice of Plaintiff's Second and Fourth Causes of Action" in which she expressly dismissed her due process claim and claim for injunctive relief with prejudice and with the express consent of counsel for Defendant. (ECF No. 13.) On October 6, 2010, the court granted Defendant's motion to dismiss Plaintiff's causes of action for violation of due process and injunctive relief. (ECF No. 22.)

On May 2, 2011, after the completion of discovery, Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56 and for this matter to be consolidated for trial with the Kirkland case pursuant to Fed. R. Civ. P. 42(a). (ECF Nos. 31, 33.) Plaintiff filed opposition to Defendant's motion for summary judgment on June 20, 2011, and the motion to consolidate on May 13, 2011. (ECF Nos. 38 & 40.) Defendant filed a reply in support of summary judgment on June 30, 2011, and a reply in support of consolidation on May 23, 2011. (ECF Nos. 39, 41.)

## II. LEGAL STANDARD AND ANALYSIS

**A.     Standard**

    1.     The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

    2.     Summary Judgment

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere

allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' iffering versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec.9, 2009).

       3.     Establishing Claims of Discrimination under the ADEA

A plaintiff can establish her claims of discrimination in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2] Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[

---

[2] The McDonnell Douglas burden-shifting framework applies to claims under both Title VII and ADEA. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004); see also Bodkin v. Town of Strasburg, 2010 WL 2640461, at *4–5 (4th Cir. June 29, 2010).

], but [was] a pretext." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

**B.     Plaintiff's Age Discrimination Claim**

The ADEA addresses age related employment issues by making it "unlawful for an employer - (1) to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To prove a prima facie case of age discrimination under the ADEA, a plaintiff must prove that (a) she is an employee covered by the ADEA; (b) she has suffered an unfavorable employment action by an employer covered by the ADEA; and (c) the unfavorable employment action occurred under circumstances in which the employee's "age was a determining factor" in the action in the sense that "'but for' her employer's motive to discriminate against her because of her age, she would not (have suffered the action)." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1112 (4th Cir. 1981)).

Upon her review, the Magistrate Judge found that Defendant was entitled to summary judgment on Plaintiff's ADEA claim because, on the record presented, no reasonable jury could find that Plaintiff was terminated because of her age. (ECF No. 45, p. 4.) The Magistrate Judge further found that Plaintiff failed to present any probative evidence that Defendant did not treat age neutrally in making its decisions when reducing its workforce. (Id. at p. 5.) To support her conclusions, the Magistrate Judge made specific reference to the evidence in the record that (1) Defendant retained at least two faculty members in the same age range as Plaintiff in the newly

7

restructured dance department; (2) Whitson, the undisputed decision-maker, was older than Plaintiff; and (3) Plaintiff did not dispute Yonkey was more qualified to teach a modern dance curriculum. (Id. at pp. 4, 5.) As a result, the Magistrate Judge concluded that Plaintiff's ADEA claim fails because the record lacks evidence from which a reasonable jury could find that Plaintiff is no longer employed by Defendant because of her age. (Id. at pp. 6-7.)

In her objections to the Report, Plaintiff asserts that the Magistrate Judge erred in finding that Plaintiff was not replaced by younger employees thereby establishing a prima facie case of age discrimination. (ECF No. 46, p. 2.) Plaintiff further asserts that the Magistrate Judge erred in holding that Plaintiff could not demonstrate she was terminated under circumstances that raise an inference of age discrimination. (Id. at p. 3.) To support her contentions, Plaintiff cites to evidence that: (1) She, a tenured professor, was terminated for Yonkey, a substantially younger faculty member who was a visiting artist as opposed to a tenured professor; (2) Two younger adjunct professors were retained in the dance department teaching courses for which she was qualified; and (3) Plaintiff could have taught beginning modern dance and, with some time, she would have been acquired qualification to teach intermediate modern dance. (Id. at pp. 2-3.) Plaintiff also contends that the Report erroneously relied on an inference of no discrimination based on the Magistrate Judge's consideration of the ages of Whitson and faculty members retained by Defendant. (Id. at p. 4.) Based on the foregoing, Plaintiff asks the court to reject the Magistrate Judge's Report and deny Defendant's motion for summary judgment. (Id. at p. 4.)

Upon the court's review, there is insufficient evidence to support a finding that Defendant's decision to terminate Plaintiff was motivated by her age. Plaintiff specifically admits that she does not have any evidence that Defendant looked at her age. (ECF No. 33-2, p. 22.) Moreover, Plaintiff's evidence fails to establish that (1) Defendant's failure to allow Plaintiff as a full-time

8

faculty member to teach courses taught by adjuncts was based on her age; (2) Defendant's decision to require the dance department to focus on modern dance as opposed to ballet, Plaintiff's specialty, was based on Plaintiff's age; (3) Defendant's decision to keep Yonkey was based on age; and (4) Defendant only retained employees that were younger than Plaintiff. Moreover, Defendant's evidence does sufficiently establish that (1) Yonkey had the superior degree, a Master of Fine Arts, and her expertise was in contemporary dance; (2) Plaintiff's position teaching ballet was eliminated due to a projected budget shortfall; and (3) faculty members older than Plaintiff were retained, including faculty in the dance department. Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether Defendant terminated Plaintiff's employment based on her age in violation of the ADEA. Therefore, Plaintiff's objections to the Magistrate Judge's Report are without merit and her claim for age discrimination fails as a matter of law.

C.     **Plaintiff's Claim for Breach of an Express Contract**

Plaintiff claims that the Faculty Manual issued by Defendant, in conjunction with oral assurances by Defendant that standards promulgated by the American Association of University Professors ("AAUP") were applicable to her employment, provided her with binding contractual guarantees.

In her Report, the Magistrate Judge determined that the Faculty Manual did not create a binding contract of employment because the manual contained a capitalized disclaimer in bold font, which disclaimer Plaintiff testified that she had read and understood. (ECF No. 45, p. 7 (citing ECF No. 33-2, p. 34).) The Magistrate Judge further found that even if the Faculty Manual created a binding contract of employment, Plaintiff could not show that Defendant breached it. (ECF No. 45, p. 7.) In this regard, the Magistrate Judge observed that Plaintiff argues that Defendant did not

9

follow procedures in the Faculty Manual for termination of a tenured faculty member, but relies on a provision of AAUP policy that was not adopted by Defendant. (Id. at pp. 7-8.) Therefore, the Magistrate Judge found that Plaintiff could not prevail on a claim for breach of contract. (Id. at p. 7.)

In her objections to the Report and Recommendation, Plaintiff merely asserts that Defendant, "by and through its handbook, statements, actions and conduct, created the expectation in faculty members that AAUP guidelines would be followed and expressed its assent to be bound by AAUP guidelines." (ECF No. 46, p. 5.) Plaintiff further contends that AAUP guidelines were clearly ignored when Defendant terminated Plaintiff. (Id. at p. 6.) Therefore, Plaintiff argues that she has submitted sufficient proof to establish that Defendant breached her contract.

In order to prevail on a breach of contract claim under South Carolina law, plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach. Taylor v. Cummins Atlantic, Inc., 852 F. Supp. 1279, 1286 (D.S.C. 1994) (citing Fuller v. Eastern Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)). In an action asserting breach of contract based on a handbook, once an employer voluntarily publishes a handbook or bulletin to its employees, the employer may be held liable for breach of contract if the employee can establish that the handbook, bulletin, or other similar material applies to the employee, sets out procedures binding on the employer, and does not contain a conspicuous and appropriate disclaimer. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). Assuming Plaintiff is covered by the relevant provisions in the Faculty Manual, the primary issues for the court to determine are whether the Faculty Manual contains a conspicuous disclaimer and whether the Faculty Manual sets out procedures binding on Defendant.

After careful review of the record, the court concurs in the Magistrate Judge's conclusion

that the Faculty Manual did not create a binding contract. First, Plaintiff explicitly admitted that she understood the Faculty Manual did not create a contract. (ECF No. 33-2, p. 34.) Second, the Faculty Manual contained a disclaimer, which disclaimer would be considered conspicuous under South Carolina common law. Hessenthaler v. Tri-Cnty. Sister Help, Inc., 616 S.E.2d 694, 697 (S.C. 2005) ("This Court has held that a disclaimer appearing in bold, capitalized letters, in a prominent position, is conspicuous"); Johnson v. First Carolina Fin. Corp., 409 S.E.2d 804, 805-06 (S.C. Ct. App.1991) (finding disclaimer appearing in all-capitalized letters, in a prominent position, conspicuous).

Finally, the provisions in the Faculty Manual directly applicable to Plaintiff's termination do not give rise to any promise, expectation, or benefit which could support a contract. See Nelson v. Charleston Cnty. Parks & Recreation Comm'n, 605 S.E.2d 744, 747 (S.C. Ct. App. 2004) ("an employer's written documents can alter the relationship and create an implied employment contract, but only if the employer phrases the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee."); see also Hessenthaler v. Tri-Cnty. Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005) (mandatory discipline procedures "typically provide that an employee may be fired only after certain steps are taken" and promise "specific treatment in specific situations"). The Faculty Manual's termination policy unambiguously states that when "the individual has permanent or continuous tenure[,] . . . [t]he faculty member's service may be then terminated by the College only for adequate cause, or under extraordinary circumstances caused by financial exigencies or revision in academic procedures." (ECF No. 33-5, p. 59.) The Faculty Manual does not mandate a particular outcome for terminating a faculty member, except to say that "[i]f termination takes the form of a dismissal for cause, it will be pursuant to the procedures outlined in the AAUP Policy Documents & Reports, 1990 Edition, pp. 11-14." (Id.) The record is

devoid of any evidence that the Faculty Manual followed provisions promulgated by the AAUP for any reason for termination other than "for cause." In this regard, because the evidence of record is that Plaintiff was terminated as a result of financial exigency,[3] Plaintiff cannot establish that the Faculty Manual was breached, because it did not create mandatory obligations for Defendant or promise specific treatment for Plaintiff regarding terminations for financial exigency. As such, Plaintiff's claim for breach of contract based on the Faculty Manual is without merit.

D.     **Plaintiff's Claim for Breach of an Implied Contract**

Plaintiff contends that an implied contract was created when Defendant allegedly led the faculty to believe that the college would be following AAUP guidelines with regards to the revisioning process, and therefore Defendant should be bound by those statements and actions.

Contrary to Plaintiff's claims, Defendant argued that the AAUP does not have power to set the rules for Defendant and its procedures are only binding if Defendant adopts them. (See ECF No. 33-5, pp. 10-11; ECF No. 33-8, p. 25.) Defendant further argued that it never suggested or implied that it would follow AAUP guidelines on financial exigency. (ECF No. 33-1, p. 29.) In conjunction with its initial arguments, Defendant asserted in its reply brief in support of summary judgment that Plaintiff did not plead a claim for breach of an implied contract and, even if she did, it is a meritless claim. (ECF No. 41, pp. 13-14.)

Upon her review, the Magistrate Judge agreed with Defendant and found that Plaintiff failed

---

[3] Defendant submitted evidence that it was looking at a budgetary shortfall of $2,000,000 in the fall of 2009. (See, e.g., ECF No. 33-8, p. 8.) This financial situation prompted Defendant to engage in a "revision process" to insure the institution's future. (Id. at pp. 8-12.) Plaintiff's employment was terminated and her position eliminated, along with twenty-eight other faculty and staff positions, as part of the "revision process" prompted by this financial exigency. (ECF No. 33-4, pp. 10-11.)

to plead a claim for breach of an implied contract. (See ECF No. 45, p. 8.) In addition, the Magistrate Judge found that while there was evidence in the record that Defendant "adopted AAUP procedures regarding termination of faculty for cause, it did not do so with regard to terminations due to financial exigency . . . ." (Id. at pp. 7-8.) As such, the Magistrate Judge found that Plaintiff's claim for breach of an implied contract also fails as a matter of law because she did not present "evidence of mutual assent that [Defendant] would follow AAUP procedures with regard to termination for financial exigency when such procedures had never been adopted [by Defendant]." (Id. at p. 8.)

In her objections, Plaintiff reasserts that Defendant, by and through its statements, actions and conduct, created the expectation in faculty members that AAUP guidelines would be followed and expressed its assent to be bound by AAUP guidelines. (ECF No. 46, p. 5.) Plaintiff further contends that Defendant consistently discussed AAUP during faculty meetings and told faculty that it followed AAUP guidelines. (Id.) In support of these allegations, Plaintiff references generally the following evidence: (1) Plaintiff's testimony that Defendant's provost, Dr. Laurie Hopkins, stated that "the college would be following AAUP guidelines for eliminating positions at a faculty meeting on December 12, 2008; (2) A sentence from the minutes of an October 9, 2008 meeting of the committee on trusteeship, which sentence states that "President Whitson explained the American Association of University Presidents (AAUP) guidelines on faculty reorganization and academic programming, and student contractual obligations for academic programming and course rotations"; and (3) A sentence from the minutes of a March 3, 2009 meeting of the board of trustees, which sentence states that "[d]ue to AAUP guidelines, this faculty member's contract for 2009-10 will be the last." (ECF No. 46-2, pp. 3-4; ECF No. 40-2, p. 9; ECF No. 33-8, p. 40.) Based on the foregoing, Plaintiff asserts that Defendant clearly breached an implied contract by not following

AAUP guidelines when it terminated Plaintiff. (ECF No. 46, p. 6.)

The court reviewed the complaint and found that Plaintiff satisfied the notice pleading requirements of Fed. R. Civ. P. 8(a) and the plausibility standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in regards to a claim for breach of an implied contract.[4]  However, after assessing the evidence regarding whether Defendant agreed to follow AAUP's procedure concerning the termination of tenured faculty during a period of financial exigency, the court concludes that there is insufficient evidence to support a finding that Defendant adopted AAUP's policy on financial exigency. Therefore, Plaintiff's objection to the Magistrate Judge's Report is without merit. Accordingly, Plaintiff's claim for breach of an implied contract fails as a matter of law and summary judgment on the cause of action should be granted to Defendant.

**E.     Defendant's Motion to Consolidate**

Defendant filed a motion pursuant to Fed. R. Civ. P. Rule 42(a) for an order consolidating the present matter with the Graham case for the purpose of trial. (ECF No. 31.) Because the court grants Defendant summary judgment on Plaintiff's substantive claims and thereby dismisses this matter, Defendant's motion to consolidate is moot.

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment of Defendant The Columbia College, and **DISMISSES AS MOOT** Defendant's

---

[4] The court finds support in the complaint for a breach of an implied contract claim based on the following allegations specifically pled by Plaintiff: (1) Defendant adhered to and followed the policies and procedures of the AAUP, ECF No. 1, ¶ 12; (2) "Defendant was notified that it may be in violation of . . . [AAUP's] policies and procedures regarding termination of tenured professors," id.; (3) Defendant ignored the polices and procedures of the AAUP thereby breaching its contract of employment with Plaintiff, id. at ¶ 25; (4) "[t]hat as a direct result and consequence of the breach of Plaintiff's employment contract by the Defendant, the Defendant is liable to the Plaintiff for actual and compensatory damages," id. at ¶ 26.

motion to consolidate. (ECF Nos. 31, 33.) The court accepts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
CHIEF UNITED STATES DISTRICT JUDGE

March 29, 2012

Columbia, South Carolina